Good morning, and may it please the Court. The unique circumstances of Mr. Ahmed's trial, which was ongoing when the COVID-19 national emergency was first declared, require this conviction. The perfect storm of events resulted in a deprivation of Mr. Ahmed's six-month right to the assistance of counsel, the right to be present and to participate in his own defense at trial, and the right to meet and consult with counsel during trial. We've outlined those events in our brief, but in sum, they create this picture of Mr. Ahmed at trial. An attorney who refuses to speak to him, to get close to him, and only communicates with unmedicated and unable to comprehend what is happening, so much so that his attorney requested a competency evaluation. He has some sort of bandage on his arm from his untreated shoulder and back injury at the jail. His ankles are bleeding and causing him pain from unnecessary shackling. And during this trial, each trial did not let him have consistent access to the materials needed to prepare for his trial, including paperwork and often writing Let's start out with the attorney issue. I will say I am troubled by the fact that the attorney didn't want to meet with your client and had some issues communicating with him. But why isn't this more appropriate for a 2255? It seems like there needs to be some factual development of the record. Why shouldn't we, why shouldn't we determine that this issue is more appropriately raised in a 2255? There are a couple of reasons for that, Your Honor. First of all, the record makes it clear what the attorney is doing, and he is very clear with the judge about his concerns and about what his expectations are for communicating with his client, which is that he is not going to. Except that there are some, I think there are some things that we don't know the answers to. For example, did he communicate by telephone? What exactly were the limitations on his communications? Was the fact that he was concerned about COVID, was that the reason that he didn't go to the jail? Because it seems also from the record like he wasn't going to the jail anyway, and instead had done his preparation before your client was pre-trial detained. All of those kinds of things I think would help us to flesh out the record and determine whether there was an effective assistance. So to be clear, I think that we are raising a couple of different issues. One is the ineffective assistance of counsel claim that's an issue to the conflict claim, but we are also raising the larger issue about the ability to communicate and which was raised to the district court repeatedly and has preserved the record. And I think procedurally, logistically, and as a matter of sort of fairness to Mr. Ahmed, pushing it to a 2255 when the attorney has made so clear on the record, his concerns, he's moving for a mistrial repeatedly. He's asking for the attorney, for Mr. Ahmed to be released. He's asking for a break in trial so that the COVID concerns could be resolved. When he's presenting all of those- The question about that. I mean, I'll say, I mean, I think this issue is preserved in the when I read the record, the district court treated this pretty reasonably. What do you think the district court should have done when these concerns were raised? So specifically, I think that the district court was very focused on how the jurors felt. That's what the district court's primary emphasis. What were the jurors thinking? Did they want to continue participating? Did they want to continue deliberating? And the record is clear that they failed to consider in any meaningful way is the communication between counsel and- Yeah. And so once again, I mean, what was the district court supposed to do about that? The lawyers saying, I'm scared of COVID. Lawyers could say that today. I mean, I don't understand. I guess, like I said, if I were the district judge in this case, I just, I don't understand what you think the district court should have done. I think the district court could have made accommodations for Mr. Ahmed to speak with his counsel. I think that's in some of the cases that the government cites to say that the district court, that there was no district court action. In those cases, the district court actually made allowances or suggested that there are allowances that could be made for the counsel to speak with his clients, such as making the courtroom available after hours or making sure that he had a safe space to talk to him in the courtroom before he was returned to the jail. Notwithstanding the other remedies that the trial attorney actually asked for, specifically a mistrial. But I mean, the mistrial, I mean, that's not an actual remedy. That's just like, COVID exists, so let my client out, right? You just can't prosecute anybody because COVID exists. I don't think that's- It doesn't make any sense. That's our position, Your Honor. Okay. So what happens after the mistrial? Right. So I think that, to be clear, that was one remedy that he asked for. The other one is to recess the trial to see what, to address it as, to see how COVID could be resolved. And so I think we're looking at this- I mean, that's what, I mean, this is my point. I just, I'm just having a difficult time seeing, I think, I mean, you make a good point about maybe setting up some kind of room or something, but the mistrial just seems, it doesn't, it doesn't do anything. It just sort of kicks the can down the road. And, you know- Your client was opposing a mistrial, so there's that aspect of it as well. I'm sorry. I just didn't hear. I'm sorry. Your client was opposing a mistrial. So, I mean, there's that aspect of it as well. I think that was the third time that he moved for the mistrial. He said that he objected, but he was making his concerns very clear, right? That it was not, that he was concerned how long he would have to sit and wait, I think was the concern there. But I just want to take, go back to, for one second. Specifically, I think we're looking at this now, knowing that COVID has become such a thing. And like, we're now towards the end of the pandemic or potentially at the end of the pandemic, but this was going on right when it first started. This is someone, his trial attorney was 77 years old. We had no guidance at the time about what steps you could take, how to protect yourself. And it was very clear, the messaging that was going out was that people that were of the trial counsel's age were particularly at risk for getting the virus and for dying from it. And I think that was- I mean, I think we all can relate to what his counsel was afraid of, especially at that point of the pandemic. But back to Judge Brasher's point, what should the trial court have done? Because every time Mr. Ahmed's counsel brought up the pandemic, it was to talk about the jury's and so the court was interacting with the jury on that front. But even though the attorney did mention, I'm not going to go to the jail, the attorney didn't ask, hey, I need time to talk with him when he gets to court. The attorney didn't ask for any accommodation. He, I think he did specifically say repeatedly that he was having trouble communicating with his client or was unwilling to communicate with his client. So that I don't think that the idea he was only presenting concerns about the jurors is true. I think that's not reflected in the record. And he did specifically ask for Mr. Ahmed to be released on very strict conditions of home confinement so that he could prepare his documentation for his testimony. But surely in a situation where, and I understand the record does not reflect what the security concern was, but he was shackled, they had a marshal standing pretty close to him during the court, which presented another issue. Why would we second guess the district court for not releasing him on home confinement when at least there appears to have been a significant security issue? I don't think that's reflected by the record. I understand that those steps were taken, but I don't think that they were justified in any way. Even when he was taken into custody after his bond was revoked, the district court specifically said, I do not find him a threat. I do not find him a security risk. I'm only detaining him because of the flight risk that he poses. And so this is not a situation in which there is any sort of security risk that was ever made up or made apparent. I think the marshals were perhaps taking a standard action. They were using their standard practices, but there's no indication that they were justified in this case. That's another problem that we've raised in the issue about his shackling because the district court was supposed to make findings. And just to go back, if I may, to Judge Rosenbaum's concern about the 2255, I just want to be clear that when we push that issue to a 2255 hearing, it's at a significant detriment to the client. And perhaps that's my main concern, but you're, he does not entitle to counsel at that stage. He's potentially forced to do it pro se. You are years down the road from the trial. And so it's very unclear that the attorney would be able to say, this is what I was thinking. This is what I was doing. You're also putting the attorney in a situation where they have to address ineffective assistance of counsel claims. There are all sorts of procedural, logistical fairness issues, I think, with pushing it to a 2255 hearing. So I just want to be abundantly clear, he is not communicating with his counselor or with his client because of his concerns and the other abundance of concerns. Let me ask you one. Is it okay? I guess I'm struggling too with, you do have the attorney making statements on the record about his concerns about COVID repeatedly, and you've made that point. How do you get us to a district court, in that case, ordering the attorney not to confer with counsel? Where is the action of the district court in this? How do we get to getters? So in Crutchfield, this circuit's unbind decision, I think that the court says it's the court or the state or the government or the criminal justice system that deprives him of the opportunity to consult with counsel. And here, because the issue was raised to the district court over and over again about the lack of his refusal to communicate with the client, the district court's refusal to engage in that or to address that in any meaningful way is the problem. And that's what I think gets us to the getters issue. And the several cases, I think the government cited two cases in its brief, where it talked about, where courts had said, this is not a court error, but in both of those issues, or this is not a getters issue, because the court wasn't involved in making the decision. But in both of those cases, the court talks about the difference when the issue is presented to the court, and then the court acquiesces in it in some way. And that's a difference from when, if the court wasn't aware of that issue. And so here, the court is clearly aware of it, doesn't take any steps to ensure that he can communicate with counsel, and that results in a getters violation. Thank you, Ms. Webster. And you've reserved five minutes for rebuttal. Ms. Cohen. May it please the court, Alex Cohen for the United States, sitting at counsel table is Chris Clark, who tried the case. The record in this case reflects that even in unprecedented times, Ahmed had a fair trial. He put on a robust defense case that spanned 10 days, and his lawyer repeatedly made requests on his behalf. Judge made every effort to accommodate. What the judge did not do is bar him from communicating with his counsel. I will start by addressing Judge Rosenbaum's question regarding whether this should really be brought under the 255 motion. It should for a couple of reasons. First, is that Ahmed's claim regarding his counsel's refusal to visit him in jail is really a strickling claim, not a getter's claim, because it is based on his counsel's choice, not on any court order. In addition- Your friend on the other side of the aisle there says that at some point, it may have started out that way, but at some point, it did become a court obstacle because the court had been advised so many times that counsel wasn't communicating with the client, and all that the court offered was the ability to use a pen and paper in court. So at some point, by not making arrangements for the attorney to be able to speak with the client, the court did inject itself and create a getter's problem. What is your response to that? Well, my response is that what his lawyer repeatedly said was that he would not go to jail. He didn't say that he was unable to communicate with his client. Well, except he said, didn't he say, didn't he say, I'm not going anywhere near him? I mean, he would have- He did. And that was in the courtroom, right? He said he was not comfortable near him, and he also made the comments regarding the jail. But I still think there's a difference between saying he's not comfortable near the client and saying you have no reasonable opportunity to if he won't go near him. Well, the record belies that he was actually not going near him. If that were the case, that would have been difficult, although they may have had phone calls available, they may have had video conferencing. We're not sure on this record what other methods were available. But the record does belied he was actually not going near him or they communicated in writing. Yeah, could you address something really quick for me on that Yeah, I think it's, I think it's in your brief, but maybe it's just something I found in the record that at one point on March 18th, 2020, the lawyer says that he spoke to Ahmed, quote, last night, very briefly, and again this morning in the marshal's lockup, end quote. So do we know from the record how he spoke to his client last night? Um, no, no, your honor, that's an open question that we have. So we have this statement on the 21st day of trial, after the motions for mistrial were made, where counsel references speaking to Ahmed, quote, last night, and again in the marshal's lockup, which suggests they probably did have some way of communicating in the evenings, but we don't know from the record what that was. The only other indication of the sentencing hearing, which is docket entry 481, defense counsel's associate mentions that he was videoconferencing with Ahmed for several hours, you know, off the PSI, but we don't know whether they were using that same videoconferencing platform during trial or not. So no, the record is silenced in that, which is another reason why this would be better heard in the 2022-25 motion, where he wouldn't have to just rely on the lawyer's statements made in the context of asking for mistrial. Ahmed could develop a factual record showing how and to what extent they were communicating in the evenings. Should this court choose to consider this claim here instead of in a 2025 motion, Ahmed has not met his burden of proving a constitutional violation, because he has not shown that there was no reasonable opportunity to communicate with counsel. And I'll note that even after the motions for mistrial were made, Ahmed's counsel continued to call 18 more witnesses for the defense, as well as present Ahmed's testimony for three days. I'm happy to answer any other questions on this or any other issue in the briefs. Could you address the business records issue? That just gave me some pause. So the way I understood that is the defendant testifies and says, you know, my business has kept these records and the district court excludes those as not sufficient under the hearsay rule that they lay a sufficient foundation, I guess, for the records. Could you just talk about that a little bit? Sure. Well, there's two arguments Ahmed makes on appeal with respect to the business records. The first is he argues that it's actually not this thing at all. He did not make that argument alone. He only argued that they don't fall into the business records exception. Now, the district court did not abuse its discretion in making that ruling, because Ahmed did not show that the records were created or maintained in the usual course of business, and the government showed a lack of trustworthiness as well. But he could not identify. Here's the issue I have. Here's, I mean, and maybe this is solved by the abuse of discretion standard, but it just seems very odd to me for a defendant who's on trial for the way, effectively, the way his businesses are run to not be able to get his business records in or something that he claims as business records as part of his own testimony. I mean, because he's not trustworthy, right? I mean, that just seems like if I mean, it seems odd if you're a district judge to be able to say this guy who's accused of a crime and is testifying in front of me, I don't think he's trustworthy. Therefore, I'm not going to let him get the business records and he needs to defend himself about his business. And what do you say about that? To clarify the lack of trustworthy point, I don't think it was that Ahmed himself wasn't trustworthy. I think it's that he couldn't show the records were trustworthy because he specifically testified that they were electronically maintained on the Behavioral Health Commission's computers, which he says the FBI sees, but then the government's agent from the FBI testified that in searching those computers, there was no record of the promissory notes referring to the assumptions. So I think that was the basis for the lack of trustworthiness, not just that Ahmed in general was untrustworthy. Yeah, but I mean, once again, it's like the FBI's testimony against the defendant's testimony. It just seems like an odd dispute for a district court to be resolving when a district court can't adjudicate him guilty. I mean, let me ask it this way. Is there anybody else that could have testified to lay the foundation to get these business records in but for the defendant? Maybe his brother potentially could have testified because there was some suggestion that he may have been able to read the documents. He also suggested that some of the behavioral health technicians may have made the documents and if that were the case, maybe some of them have come in and testified to the documents. But in addition to the lack of trustworthiness, there was this lack of clarity as to who created the documents, when they were created, and how they were maintained. For example, he also wasn't sure how exactly the documents got to his lawyer's office when they were seized from the punk He wasn't really sure who printed them out or how they got there. So there was several issues in which he didn't give clear, concrete testimony as to how they were created, even though they were documents from his business. In any event, the error would be harmless because Ahmed himself did testify that he relied on these documents and he also had his attorney, Hirschfeld, testify that he advised him on the use of invoices, promissory notes, and hardship exemption forms. He also had other evidence that he put on to show that he made legitimate efforts to collect payment from patients, including calling Thomas Ferris, somebody who contacted him at EMD, the insurance co-payers, as well as an accountant, Daryl Lawson, who he took to create a census of the amounts that proposition. If your honors have any other questions, I'm happy to address them. If there are none, the government is brief and ask that the court affirms the conclusions. Thank you, Ms. Cohen. Ms. Webster, you have five minutes. Thank you, your honors. First, if the court is inclined to find that the record is insufficient to address these issues, we'd ask for it to be remanded for an evidentiary hearing as opposed to kicking it to a 2255. I think there's precedent for this court to do that in U.S. v. Williams, which is 902 F 1328, a 2018 decision from this court. Second, to address the government's argument that there was a reasonable opportunity for Mr. Ahmed to consult with his attorney, I think the problem with the government's argument is that they are flipping the inquiry on its head. First of all, that argument is based on this court's decision in United States v. Vasquez. In Vasquez, the issue was the attorney in the middle of a bench conference with the court said, can I have a break so that I can go consult with my client? The district court said, no, I'm not interrupting this bench conference for you to go consult with your client, but you can talk to him immediately afterwards. This court held that was not a getter's violation to not interrupt the middle of an ongoing bench conference to allow them to consult. In that case, there's this language that they had a reasonable opportunity, meaning what happened immediately after the bench conference. That is certainly not the issue that we have here. Specifically, if you go back to the getter's decision, the getter's case was a 10-day trial. The only period where counsel was prevented from speaking to the defendant was one overnight recess. While I think under the period decision, the prohibition on contacting someone or on contacting the client can't be brief, it can't be a 15, 30-minute recess. Once it extends beyond that, certainly to the overnight recesses and things like that, that is a problem. It doesn't matter if they had all the opportunity in the world to communicate before trial. That's just not what the getter's decision is. Why isn't this, I mean, the district judge didn't prohibit them from communicating, so why isn't this just an ineffective assistance claim if it's anything? Right. Your Honor, I think this is what I was speaking about before, which is that because the district court was put on notice repeatedly over and over, and the district court didn't take any action, that puts us in the getter's territory. I want to emphasize that this claim about his right to consult with counsel, to be meaningfully present at trial, to participate at trial, it's not just the counsel issue. It's all the things that we have raised in the brief. I also want to emphasize that in getters and in decisions like this court's decision in Noviton, those decisions talk about the importance of being able to consult with your counsel, not just because of what you might do at trial, not just because of what evidence you may seek to admit or how you can direct the examination of a witness, but in order to ensure that the defendant understands what's going on and that the defendant understands what's happening at trial and that you can do things like prepare for your testimony. So what do you say about, so this, the snippet of testimony, it's just trial record that I read about overnight communication and communication in the marshal's lockup, that was in preparation for his testimony. That was the explanation that the lawyer gave. I mean, if that's on the record that they were communicating overnight. I think that, I have two points about that. One is that he describes how brief it was when he says that the attorney is saying, this was a very brief interaction. Yeah, it was overnight though. I guess that's the thing that stuck out to me. I think he said it was last night. And so based on the other issues on the record or other instances in the record, I think that it's when he is actually still in the courtroom, like when he's communicating with his attorney about whether or not to call his brother to testify at trial, that's a very brief conversation that they're having in the courtroom. Well, you said previously when I was asking you about this, that one of the things that this record could have done was allow them to use the courtroom for communication. So I guess if they were communicating last night in the courtroom, then it seems like the thing that you said should have been done, might've been done. I think there are a couple of answers at first. He says that he communicated with him just about whether or not to testify, not about preparing him to testify, which I would submit are two pretty different things. And that preparing someone to testify, especially for the amount of time that he was on the stand, requires a lot of time, certainly more than this brief period. Second, I think that when I was saying that there are alternatives that he could have made or could have taken, I meant that the court could have made the courtroom available for those sort of extended conversations that are necessary to prepare someone to testify. But instead, I think the record indicates to me that they were very brief conversations that were being held sort of while the attorney said, can I have one moment to consult with my client? I was doing it in the courtroom with potentially everyone else around. Let me ask you one question. Say we agree with you on the getters issue. Aren't we necessarily extending getters where getters is you have the active requirement from a court saying you attorney don't communicate with your that at some point an attorney communicating to the court that the attorney is not going to be talking with the client for whatever reason, that it somehow is transformed into a getters situation. Isn't that an extension of getters? I just want to be very clear that this has to be a situation under this court's Nelson decision. There has to be some indication that they want to communicate on the record. So I don't want this to be taken as though every time an attorney doesn't communicate with his client sufficiently, that this is now some sort of getters issue. That is not what we're arguing. Here, there is a very clear need to discuss testimony. He says he wants it to be able to prepare for his testimony. And so when you combine it with that limited scope after this court's Nelson decision, I don't think it's a full extension of getters because there is the court action and denying all of his attorney's request for relief. And under the Crutchfield decision, it specifically says the court system, the state, or the prosecutor, or the criminal justice system. And I think that's what's operating here to prevent him from communicating with his counsel. I see my time is up. Thank you. Thank you, counsel. Thank you both.